PER CURIAM.
We have for review a referee’s report regarding alleged ethical breaches by Kenneth J. Kavanaugh. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee’s factual findings, recommendations as to guilt, and recommended discipline, with the exceptions noted below.
PROCEEDINGS TO DATE
Harry Poliak hired attorney Kenneth J. Kavanaugh to assist in his effort to cancel an automobile lease agreement and recover his trade-in automobile from Endicott Buick. When the initial effort failed, Pol-iak and Kavanaugh entered into a contingency fee agreement and Kavanaugh filed suit on Poliak’s behalf against Endicott Buick for deceptive and unfair trade practices.
The contingency fee contract provided:
If there is a recovery, the fee for the professional services of the Attorney will be the greater of that amount awarded by the Court (to be paid by the Defendants) or that amount determined according to the following schedule:
[[Image here]]
(b) From the time of filing an Answer or the demand for appointment of arbitrators through the entry of judgment:
(1) 40% of any recovery up to $1 million. ...
The parties settled prior to trial for $44,868.06 entitling Kavanaugh to a fee of 40% of the recovery. However, Kava-naugh withheld a fee of 58% of the proceeds and had his client sign a copy of the closing statement which showed the retention of the 53% which amounted to some $23,780.07. When Poliak later realized the fee charged was in excess of the 40% agreed upon in the fee contract, he filed a complaint with The Florida Bar (“the Bar”).
The matter proceeded to a hearing before a referee, and the referee made the following findings of fact:
B. On or about January of 1999, the Respondent was hired by Harry Poliak to represent him in a Deceptive and Unfair Trade Practices action against Endicott Buick.
C. Poliak and the Respondent agreed to a contingency fee contract which stated that Respondent would receive: “the greater of the amount awarded by the Court (to be paid by the defendants) or that amount determined according to the following schedule: ... 40% of any recovery up to $1 million....”
D. The case was eventually settled before trial in March of 2001 for $44,868.06.
E. After settlement of the case, Ka-vanaugh signed a final closing statement and presented it to Poliak on April 3, 2001. In the final closing statement, Kavanaugh’s attorney’s fee was $23,780.07, which amounted to 53% of the net proceeds.
F. Because Respondent charged an amount of fees above the limits set forth in the terms of the contingency agreement, respondent was required to get prior court approval for his increased fee.
G. Attorney Kavanaugh asserts in his defense that the amount of fees is appropriate and in conformity with the language set forth in the contract for representation. Kavanaugh claims that the contingency fee provision of the contract is not applicable in that Kavanaugh claims a greater amount of attorney’s fees was awarded by the court. Kava-naugh argues the settlement reached in this matter is the equivalent to court ordered attorney’s fees.
*92 H. There is no evidence that any judge signed a settlement agreement. Nor was there a court order which delineated what portion of the $44,868.06 net proceeds was to be applied to attorney’s fees.
I. It is unequivocal that at no time prior to the disbursement of funds was the matter of any award of attorney’s fees submitted to the trial court. Rather, in September 2001, Kavanaugh motioned the court for its entry of an order approving fees charged. The trial court found that it lacked jurisdiction over the matter and denied Kavanaugh’s motion as moot in that the proceeds of the lawsuit had already been disbursed.
J. Respondent failed to get prior court approval for his increased fee.
K. Respondent arbitrarily awarded himself 53% of the net proceeds.
Based on these findings, the referee recommended that Kananaugh be found guilty:
I recommend that Respondent be found guilty of violating [Rule of Professional Conduct 4-1.5(a) ], which provides that an attorney shall not enter into an agreement for, charge, or collect a clearly excessive fee.
The referee also made the recommendations' as to disciplinary measures to be imposed:
A. Public reprimand before the Supreme Court....
B. Restitution to Poliak in the amount of $4,307.83, plus interest at the statutory rate from April 3, 2001 (the date of the final closing statement) to the present, to be payable within thirty (30) days of the entry of this order.
C. Revocation of the Respondent’s Florida Bar Board Certification in Civil Trial Law.
D.Payment of the Bar’s costs in these proceedings.
In recommending imposition of the above disciplinary measures, the referee took into account the following factors:
A. Personal history of the Respondent:
Age: 61.
Date admitted to the Bar: June 1, 1976.
Board Certification: Civil Trial Law.
B. Aggravating factors:
9.22(b) Dishonest or selfish motive.
9.22(g) Refusal to acknowledge wrongful nature of conduct.
9.22(h) Vulnerability of victim.
9.22(f) Substantial experience in the practice of law.
9.22(j) Indifference to making restitution.
C. Mitigating factors: None.
ANALYSIS
Kavanaugh has petitioned for review, arguing that he should be found not guilty of the alleged violation or, alternatively, that he should only be admonished and required to refund $4,307.83. The Bar has cross-petitioned, arguing that a thirty-day suspension, not a public reprimand, is the appropriate sanction.
The Court’s standard of review for evaluating a referee’s factual findings and recommendations as to guilt has been articulated in numerous decisions:
This Court’s review of such matters is limited, and if a referee’s findings of fact and conclusions concerning guilt are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee.
Fla. Bar v. Rose, 823 So.2d 727, 729 (Fla.2002). Implicit in this standard is the requirement that the referee’s factual find *93 ings must be predicated upon evidence presented at the disciplinary hearing. Ka-vanaugh contends that the referee’s recommendation that he be found guilty of collecting a clearly excessive fee is not supported by the evidence. We disagree.
The referee made findings that Kavanaugh and Poliak signed a contingency fee contract; the contract provided that Kavanaugh’s fee would be the greater of either the amount awarded by the court or 40% of the recovery amount; the court did not award any fees; and Kavanaugh withheld 53% of the net recovery for his fees. A review of the record shows that each of these factual findings is supported by the testimony and uncontested documentary evidence. Kavanaugh’s claim that the contractual fee provision was modified by an implied amendment to the agreement pursuant to his fee statement and his client’s signature thereon is simply a re-argument of this fact-based claim before the referee. We approve the referee’s rejection of this claim and the referee’s factual findings, as well as the referee’s recommendation that Kavanaugh be found guilty of collecting a clearly excessive fee in violation of rule 4-1.5(a).[1]
The Court’s standard of review for evaluating a referee’s recommended discipline is as follows:
In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. However, generally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions.
Fla. Bar v. Springer, 873 So.2d 317, 321 (Fla.2004) (citations omitted). In the present case, we conclude the recommended discipline meets this standard with the exceptions noted herein.
Initially, we conclude the recommended sanction of a public reprimand has a reasonable basis in existing ease law. See Fla. Bar v. Hollander, 594 So.2d 307 (Fla.1992) (imposing a public reprimand in an excessive fee case arising from a fee dispute involving a contingency fee agreement); Fla. Bar v. Johnson, 526 So.2d 53 (Fla.1988) (imposing a public reprimand in an excessive fee case arising from a fee dispute involving trust account violations). In contrast, the cases cited by the Bar to support suspension are distinguishable. See Fla. Bar v. Forrester, 656 So.2d 1273 (Fla.1995) (imposing a ninety-one day suspension where the attorney failed to return the unearned portion of his fees when he was discharged); Fla. Bar v. McAtee, 601 So.2d 1199 (Fla.1992) (imposing a ninety-one day suspension where the attorney deceived the client concerning both the nature of his representation and the fee amount); Fla. Bar v. Richardson, 574 So.2d 60 (Fla.1990) (imposing a ninety-one day suspension where the attorney overcharged his clients, encouraged the clients to obtain a home mortgage to pay for his excessive fees, and then charged one of the clients a finder’s fee for helping the client in obtaining the loan to pay for his excessive fees).
*94 Further, we conclude that in light of the aggravating and mitigating circumstances reflected in the record, the recommended sanction of a public reprimand has a reasonable basis in the Standards for Imposing Lawyer Sanctions (“Standards”). The Standards provide:
Standard 7.0 Violations of Other Duties Owed as a Professional
Absent aggravating or mitigating circumstances ... the following sanctions are generally appropriate in cases involving ... unreasonable or improper fees....
[[Image here]]
7.2 Suspension is appropriate when-a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
7.3 Public reprimand is appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
Fla. Stds. Imposing Law. Sanes. 7.0, 7.2-7.3. Of course, a presumptive sanction under the Standards is subject to aggravating and mitigating circumstances. See Fla. Stds. Imposing Law. Sanes. 9.0.
In the present case, as noted above, the referee’s report notes five aggravating circumstances but no mitigating circumstances. While we find no error in the determination of aggravating circumstances, we also agree that several mitigating circumstances are reflected on the face of the record. The Bar conceded at the hearing below that Kavanaugh has no pri- or disciplinary record. In addition, Kava-naugh contends that even after the higher fee was deducted from the settlement amount, Pollack still had an excellent result. At the hearing below, the referee stated: “Upon hearing the case, I can tell you this. I think Mr. Kavanaugh got an exceptional result for his client. There isn’t any doubt about that.... I think that an excellent result was obtained by Mr. Kavanaugh.” The Bar does not dispute this claim. Kavanaugh also asserts that the major reason Endicott Buick settled this case prior to trial was to avoid the threat of substantial statutory attorneys’ fees; and a substantial portion of the settlement amount was paid to extinguish En-dicott’s liability for his fees, rather than to compensate Poliak for his liquidated damages. Again, the Bar does not dispute this claim. Kavanaugh claims that throughout his discussions with Poliak, Kavanaugh was forthright about his fee demands, and he cites Poliak’s signature on the “Final Closing Statement,” to support his claim.
Based on all these circumstances, including the aggravation and mitigation, we conclude the sanction of a public reprimand is appropriate. While we have declined the Bar’s invitation to invoke a greater sanction, we nevertheless caution that lawyers who charge excessive fees are guilty of serious ethical breaches that diminish public confidence in the legal profession.[2]
Finally, we consider the recommendation that Kavanaugh’s certification in civil trial law be revoked. The issue of revocation is addressed in the Florida Bar rules:
(b) Revocation Due to Disciplinary Action. A certificate may be revoked by the board of governors by reason of *95 disciplinary action taken pursuant to the Rules Regulating The Florida Bar.
R. Regulating Fla. Bar 6-3.8(b). Under the plain language of this rule, the Board of Governors is vested with exclusive revocation authority.[3] Accordingly, rather than acting on this recommended sanction, we leave the recommendation of the referee to be acted upon by the Board of Governors of the Bar. We approve the remainder of the referee’s recommended disciplinary measures.
CONCLUSION
We find Kenneth J. Kavanaugh guilty of collecting a clearly excessive fee in violation of rule 4-1.5(a), and we order that he receive a public reprimand, which shall be administered by the Board of Governors of The Florida Bar upon proper notice to Kavanaugh to appear. Kavanaugh is also ordered to pay restitution forthwith to Harry Poliak in the amount of $4,307.83 with interest accruing at the statutory rate from April 3, 2001, to the present. Restitution is to be paid in full within thirty days after issuance of this opinion. Finally, judgment is hereby entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Kenneth J. Kavanaugh in the amount of $1,553.69, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

. Rule 4-1.5, entitled "Fees and Costs for Legal Services," provides as follows in relevant part:
(a) Illegal, Prohibited, or Clearly Excessive Fees and Costs. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee ....
R. Regulating Fla. Bar 4-1.5 (emphasis added).

. In his report the referee concluded:
The Respondent's misconduct cannot be characterized as negligent. The Respondent arbitrarily amended the terms of the contingent fee contract for his benefit and calculated a greater award of fees than he was entitled to. The Respondent's client, a senior citizen, suffered actual and substantial harm as a result of the Respondent's misconduct.

. The sole case cited by the Bar to support revocation is distinguishable in this regard. See Fla. Bar re Hollander, 638 So.2d 516 (Fla.1994) (approving the denial of recertifi-cation following two disciplinary reprimands for charging an excessive fee). Unlike the present case, Hollander was a recertification case governed by rule 6-3.6, not a revocation case governed by rule 6-3.8.